IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AYSE NILGUN BALAS,
               Plaintiff,

v.                                          Civil Action No. 3:16-cv-00553-JAG

THE VISITORS OF LONGWOOD
COLLEGE et al.,
               Defendants.

## OPINION

Ayse Nilgun Balas—a woman of Turkish ethnicity and national origin—taught marketing at Longwood University ("Longwood") in the College of Business and Economics (the "CBE"). After Longwood denied her tenure application, Balas sued the Visitors of Longwood University and eight people in both their individual and official capacities. Balas alleges a procedural due process violation in Count I, and discrimination and retaliation under 42 U.S.C. § 1981 in Counts II and III. The defendants have moved to dismiss the case. Because the tenure application process does not give rise to a protected property interest under the Fourteenth Amendment, the Court GRANTS the motion to dismiss Count I. Nevertheless, because of the inference drawn from remarks that Balas did not "fit in" at Longwood because of her accent, and because Balas complained of discrimination before her termination, the Court DENIES the motion as to Counts II and III.

## I. BACKGROUND

Longwood, a state-supported university, hired Balas in 2009 as an assistant professor of marketing in the CBE. After a five-year probationary period, Balas could apply for a tenured position. Each year during the probationary period, both the relevant department chair and the

Promotion and Tenure Committee (the "P&T Committee")[1] evaluated the faculty member's performance. The performance reviews focus on three areas: teaching, scholarship, and service.

In November 2011, Balas's department chair, John Gaskins, sent a letter reviewing her professional file and noted: "One area for potential improvement is in the speech patterns in your presentation. Your command of the vocabulary and grammar is excellent, and your accent does not interfere with comprehension, but the cadence and inflections in your speech patterns might be difficult for some to follow." (Reply Ex. 1.)[2] In Balas's annual performance evaluation dated May 10, 2012, Gaskins rated Balas's teaching as "Satisfactory," and commented that "[l]ittle progress has been made . . . in addressing the cadence and inflection issues cited earlier. As we discussed, I am concerned that you may not be projecting sufficient presence in the classroom." (Opp'n Ex. 1.) Gaskins rated Balas's scholarship, service, and overall performance as "Needs Improvement." On May 17, 2012, Balas responded to Gaskins's evaluation, noting her objections.

On May 21, 2012, the Dean of the CBE, Paul Barrett, told Balas that Longwood would not renew her contract. Dean Barrett told Balas "that he was issuing a terminating contract because [Balas was] 'not a good fit' with the College." (Am. Compl. Ex. 2.) Longwood issued a terminating contract on June 11, 2012. On June 22, 2012, Balas appealed the terminating contract to the Faculty Status and Grievance Committee (the "FSGC"). On June 30, 2012, Balas signed the terminating contract, but added a statement that Dean Barrett, Department Chair Gaskins, and others had unlawfully discriminated against her.

_____

[1] Four tenured members of the CBE faculty make up the P&T Committee.
[2] The Court can consider documents not attached to the complaint as long as "the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Here, both parties attach a document to their briefs, both of which are integral to Balas's complaint, and neither of which the opposing party challenges on the grounds of authenticity.

On September 28, 2012, the FSGC recommended reversing the termination decision and reissuing Balas a contract for the next academic year. The FSGC based its decision on the "troubling" process, most notably the timeline between the annual performance evaluation and the recommendation to issue a terminating contract. In the same letter, however, the FSGC noted that no violation of university policy occurred when Gaskins rated Balas as "Needs Improvement" in her performance evaluation. On October 5, 2012, Dean Barrett and the Provost, Kenneth Perkins, affirmed the findings of the FSGC and reappointed Balas for another year.

In October 2013, the P&T Committee met to discuss probationary faculty members, including Balas. At that time, two of the defendants, Claire La Roche and Cheryl Adkins, and two non-defendants, Glenn Dardick and Raymond Brastow, made up the P&T Committee. During a discussion of faculty members with foreign accents, including Balas, La Roche expressed an opinion that some faculty members did not "fit in" at Longwood. La Roche also shared that she had "received complaints from students that could not understand Dr. Balas." (Am. Compl. Ex. 3.) When questioned about these comments by Dardick, La Roche did not elaborate. La Roche also raised concerns about Balas's grading curve and research publications, but did not raise similar concerns about another faculty member under evaluation. After this meeting, Dardick expressed concerns to Dean Barrett and Provost Perkins about discrimination by the P&T Committee against Balas.

Charles White replaced Gaskins as department chair, and Gaskins replaced Dardick on the P&T Committee. Balas asked Gaskins to recuse himself from considering her tenure application with the P&T Committee based on his prejudice against her for asserting her rights. Gaskins refused.

3

In May 2014, Department Chair White rated Balas's teaching, scholarship, and service as "Meets Expectations." Then, in October 2014, White told Balas he could not recommend her for tenure based on the quality of her scholarship. On the same day, the P&T Committee—now made up of Gaskins, La Roche, Adkins, and Frank Bacon—agreed not to support Balas for tenure. Both White and the P&T Committee denied Balas's requests for reconsideration. Dean Barrett and Provost Perkins concurred in the recommendation against tenure.

On January 16, 2015, Balas submitted a grievance for the denial of tenure to the FSGC. On February 20, 2015, after conducting a hearing, the FSGC issued its opinion. The FSGC noted some "alarm" at the process used by the P&T Committee and described the P&T Committee's "sloppy work." The FSGC did find some of Balas's claims unsubstantiated, such as Department Chair White's assessment of the quality of her scholarship.[3] Nevertheless, the FSGC recommended correcting some of the procedural errors, giving Balas an opportunity to submit additional information, then having Department Chair White and the P&T Committee reassess Balas's tenure application. Presumably after completing these steps, White and the P&T Committee reiterated their recommendation against tenure. Balas appealed to Dean Barrett, Provost Perkins, the President of Longwood University, and the Board of Visitors. All appeals were denied. On June 30, 2015, Longwood issued Balas a terminating contract.

---

[3] After noting the "sloppy work," the FSGC stated:

> At the same time, the [FSGC] does not believe that the CBE's decision is surprising. [Balas] received numerous warnings and reminders of the importance of quality scholarship throughout [her] tenure track, as well as concerns about [her] teaching. In many instances, the [FSGC] finds that [Balas] may have disregarded crucial constructive criticism in favor of defending [her] own teaching methods or scholarship, and furthermore did not take advantage of opportunities to speak in person with the P&T Committee, [department chair], or Dean about particular concerns any of them had.

(Am. Compl. Ex. 5.)

## II. <u>DISCUSSION</u>[4]

Balas alleges three counts in her amended complaint: (I) deprivation of due process in violation of 42 U.S.C. § 1983; (II) national origin discrimination under § 1981 in violation of § 1983; and (III) retaliatory discharge under § 1981 in violation of § 1983. The defendants move to dismiss all counts.

As an initial housekeeping matter, the Court dismisses the Visitors of Longwood University as immune from suit under the Eleventh Amendment. The Eleventh Amendment extends to state universities and their boards of visitors, and Congress has not abrogated Eleventh Amendment immunity for claims brought under § 1981 or § 1983. *See Herron v. Va. Commonwealth Univ.*, 366 F. Supp. 2d 355, 363–64 (E.D. Va. 2004), *aff'd* 116 F. App'x 467 (4th Cir. 2004). Nevertheless, the Court will allow the claims against the individual defendants in their official capacities to proceed under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908). At some point, however, Balas will need to identify the defendant who would have authority to grant the requested prospective injunctive relief.[5]

---

[4] A Rule 12(b)(6) motion to dismiss gauges the sufficiency of a complaint without resolving any factual discrepancies, testing the merits of the claim, or judging the applicability of any defenses raised by the non-moving party. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act . . . ." *Ex Parte Young*, 209 U.S. 123, 157 (1908); *see Klaassen v. Univ. of Kan. Sch. of Med.*, 84 F. Supp. 3d 1228, 1246 (D. Kan. 2015).

### Count I: Procedural Due Process Violation

The Court will dismiss Count I because Balas does not have a protected property interest in the tenure application process, and, even if she did, she received the process due. In order to succeed on a procedural due process claim like the one Balas alleges in Count I, a plaintiff must show (1) the existence of a protected interest, (2) the deprivation of that interest by a state actor, and (3) the occurrence of that deprivation without due process of law. *See Tri-County Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 436 (4th Cir. 2002) (citing *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 826 (4th Cir. 1995)). The Constitution does not create these protected interests; instead, at least for protected property interests, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). To have a protected property interest in a benefit, such as continued employment, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

In this case, Balas alleges a protected property interest in the tenure application process. While tenure itself is a protected property interest,[6] "[t]enure review procedures, without more, do not give rise to a protected property interest." *Davis v. Rao*, 583 F. App'x 113, 114 (4th Cir. 2014). The "without more" presumably refers to the possible situation left open in *Siu v. Johnson*, where "the University's procedures and their application over time had given rise to an institutional 'common law of re-employment' under which the interest created by the probationary appointment had been elevated to something firmer than a mere 'unilateral

---

[6] *See Roth*, 408 U.S. at 576–77.

expectation.'" 748 F.2d 238, 243–44 (4th Cir. 1984) (citing *Roth*, 408 U.S. at 577, 578 n.16).[7] Such a situation, however, does not exist here. The Court faced a similar set of facts in *Davis v. Rao*, where the university's faculty guidelines set out criteria for tenure. 982 F. Supp. 2d 683, 685 (E.D. Va. 2013), *aff'd* 583 F. App'x 113. The Court held that "there is no indication that the Guidelines created a 'common law of reemployment' contemplated in *Siu*." *Id.* at 691. Like the guidelines in *Davis*, Balas alleges nothing to indicate that the application of Longwood's procedure for tenure-eligible faculty has created anything more than a unilateral expectation of tenure if a faculty member follows the procedure. This does not suffice to give rise to a protected property interest. As a result, Balas has failed to state a claim in Count I.

Even assuming a protected property interest, Count I also fails because Balas received the level of process due. Because of the highly subjective nature of a tenure decision, the process due to a tenure-eligible faculty member "can only be the exercise of professional judgment by those empowered to make the final decision in a way not so manifestly arbitrary and capricious that a reviewing court could confidently say of it that it did not in the end involve the exercise of professional judgment." *Siu*, 748 F.2d at 245. A reviewing court cannot "inquire into the ultimate wisdom, or prudence, or informed nature of the decision finally made," but can only assess whether the decision "was made, wisely or not, by a specific exercise of professional judgment and on the basis of factors clearly bearing upon the appropriateness of conferring academic tenure." *Id.*

In this case, Longwood exercised professional judgment in denying Balas tenure. The CBE alerted Balas that her scholarship and service needed improvement, at least dating back to May 2012. In 2014, Department Chair White—against whom Balas alleges no discriminatory

---

[7] Balas relies on *Siu* as recognizing a protected property interest in the tenure application process. *Siu*, however, only assumed such an interest "for purposes of this appeal only." 748 F.2d at 244.

actions or motives—did not recommend Balas for tenure because of the quality of her scholarship. The FSGC, despite finding other issues with the tenure review process, held that no violation occurred with White's assessment because it "believes that Dr. White is qualified, and justified, to assess the quality of your research upon his review of your published papers." (Am. Compl. Ex. 5.) Further, while the CBE did not complete Balas's tenure review process perfectly, the FSGC recognized the procedural errors and directed the CBE to correct them. After these corrections—which included giving Balas the opportunity to submit additional information— both the P&T Committee and Department Chair White came to the same conclusion, recommending against tenure for Balas. Balas's disagreement with this decision does not negate the fact that the CBE, with the help of the FSGC in correcting certain errors, exercised professional judgment in denying Balas tenure based on factors bearing on the appropriateness of academic tenure (i.e., scholarship). Accordingly, even if Balas had a protected property interest in the tenure application process, the defendants did not deprive her of that interest without due process.

### Count II: § 1981 Discrimination

As to Count II, Balas has plausibly stated a claim for national origin discrimination under § 1981 because of the inferences drawn from comments made by La Roche, Gaskins, and Barrett. Section 1981 protects the right of all persons to make and enforce contracts. 42 U.S.C. § 1981. To prove a claim of discrimination under § 1981, the plaintiff must show both the intent to discriminate based on national origin and the interference with a contractual interest based on that discrimination. *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006).

In this case, the alleged discrimination arises from comments about Balas's accent paired with statements that she was "not a good fit" at Longwood and did not "fit in." Such

discrimination allegedly occurred in connection with Balas's termination in 2012 by Gaskins and Barrett, and in the P&T Committee by La Roche.   Drawing all inferenced in favor of Balas, which the Court must do at this stage, Balas has plausibly alleged that the defendants discriminated against her because of her accent (which stems from her national origin), and that this discrimination interfered with her employment at Longwood.   Thus, Count II survives the defendants' motion to dismiss.

### Count III: § 1981 Retaliation

Finally, the defendants fail to make any arguments addressing Count III, despite the fact that they moved for its dismissal.   The Court, therefore, denies the motion as to Count III.   *See* Local Rule 7(F)(1).[8]

Even evaluating the claim, however, Balas has stated a claim for retaliation under § 1981 because she complained of discrimination before her termination, and has alleged sufficient facts that a causal connection may exist between those two actions.   To state a claim for retaliation under § 1981, the plaintiff must show (1) engagement in a protected activity related to discrimination, (2) an adverse employment action, and (3) a causal connection between the protected activity and the employment action.   *Tillery v. Piedmont Airlines, Inc.*, 2016 WL 5334673, at *10, *12 (E.D. Va. Sept. 22, 2016) (Brinkema, J.) (citing *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015); *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)).

In this case, Balas complained of discrimination when she provisionally signed her terminating contract in 2012, and when she asked Gaskins to recuse himself from the P&T

---

[8] "All motions . . . shall be accompanied by a written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies." Local Rule 7(F)(1).

Committee because of his prejudice against her for asserting her rights.   While the 2012 complaint did not result in adverse action after the FSGC reversed the terminating decision, Gaskins did serve on the P&T Committee that recommended against tenure for Balas, which contributed to the denial of tenure.   Balas may eventually have trouble proving a causal connection between her complaints of discrimination and the ultimate denial of tenure, but she has alleged enough to get past the motion to dismiss stage on Count III.

### III. <u>CONCLUSION</u>

For these reasons, the Court GRANTS IN PART and DENIES IN PART the defendants' motion to dismiss.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: _____2/3_____ , 2016 2017
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge