# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

AYSE NILGUN BALAS,
        Plaintiff,

v.
                                         Civil Action No. 3:16-cv-00553-JAG

W. TAYLOR REVELEY, IV, et al.,
        Defendants.

## OPINION

Longwood University ("Longwood") denied tenure to Ayse Nilgun Balas, a woman of Turkish ethnicity and national origin who taught marketing in the College of Business and Economics (the "CBE"). According to Longwood, it denied Balas's tenure application based on the quality of her scholarship and teaching. According to Balas, Longwood denied her tenure application based on her national origin and her opposition to national origin discrimination.

Balas has sued for discrimination and retaliation under 42 U.S.C. § 1981. The defendants[1] have moved for summary judgment. Because Longwood denied Balas tenure for a legitimate, nondiscriminatory reason (i.e., her scholarship and teaching), Balas's claims fail. Accordingly, the Court will grant the defendants' motion for summary judgment.

## I. BACKGROUND

Longwood, a state-supported university, typically hires new faculty members for five-year probationary periods. Within the CBE, all probationary faculty members receive reviews

---

[1] Balas originally sued the Visitors of Longwood University and eight individuals, including the President and Provost of Longwood, the Dean of the CBE, the two department chairs under whom Balas taught, and the members of the Promotions and Tenure Committee that recommended against tenure for Balas. By Opinion and Order dated February 3, 2017, the Court dismissed the Visitors of Longwood University as immune from suit under the Eleventh Amendment, but allowed the case to proceed against the individual defendants in their official capacities under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908). For simplicity, however, the Court will refer to the remaining defendants as either "the defendants" or "Longwood."

each fall, and all faculty members receive reviews each spring. In the fall, both the relevant department chair and a Promotion and Tenure Committee (the "P&T Committee")[2] conduct a review of all probationary faculty members, and each makes a recommendation on whether to renew the faculty member's contract. The reviews focus on three areas: teaching, scholarship, and service. Following the fifth year review, the probationary faculty member may apply for tenure. The department chair and the P&T Committee again both review the applicant and submit separate recommendations to the Dean of the CBE. The Dean then submits a recommendation to the Provost, who then submits a recommendation to the Board of Visitors. The Board of Visitors makes the ultimate decision on tenure applications.

In 2009, Longwood hired Balas for a five-year probationary period as an assistant professor of marketing in the CBE. Longwood renewed her contract after years one (2009 to 2010) and two (2010 to 2011).

In year three (2011 to 2012), John Gaskins, Balas's department chair, reviewed Balas in the fall and the spring. In November 2011, Gaskins reviewed Balas as a probationary faculty member and recommended that Longwood renew her contract. In this review, Gaskins included the following comment:

> One area for potential improvement is in the speech patterns in your presentation. Your command of the vocabulary and grammar is excellent, and your accent does not interfere with comprehension, but the cadence and inflections in your speech patterns might be difficult for some to follow. I suggest that you might video record some of your presentations and/or seek vocal coaching.

(Mot. Summ. J. Ex. 10.) In May 2012, Gaskins conducted the annual faculty evaluation for Balas. He rated her teaching as "Satisfactory," but rated her scholarship, service, and overall

---

[2] Four tenured members of the CBE faculty make up the P&T Committee.

performance as "Needs Improvement." In the comments, Gaskins wrote that "[l]ittle progress has been made . . . in addressing the cadence and inflection issues cited earlier. As we discussed, I am concerned that you may not be projecting sufficient presence in the classroom." (Gaskins Dep. Ex. 6.)

In late May 2012, Balas met with Paul Barrett, Dean of the CBE. Dean Barrett told Balas that Longwood would not renew her contract after the 2012–2013 school year. In this meeting, Dean Barrett told Balas "that he was issuing a terminating contract because [Balas was] 'not a good fit' with the College." Barrett, however, did not provide "any written explanation of how a 'good fit' is defined." (Am. Compl. Ex. 2.) Longwood issued Balas a terminating contract in June 2012. Balas signed the terminating contract, but added a statement that Dean Barrett, Department Chair Gaskins, and others had unlawfully discriminated against her. Balas appealed the terminating contract to the Faculty Status and Grievance Committee (the "FSGC") who, in September 2012, recommended reversing the decision to issue the terminating contract. Dean Barrett and the Provost affirmed the findings of the FSGC and reappointed Balas for another year.

In Balas's fourth year at Longwood (2012 to 2013), in November 2012, the P&T Committee unanimously recommended that Longwood renew Balas's contract for another year. In his separate fall review, Department Chair Gaskins expressed "grave reservations" about recommending Balas's continued appointment. Longwood renewed Balas's contract.

In July 2013, Gaskins conducted the annual faculty evaluation for Balas. He included a comment that Balas displayed a disrespectful attitude by failing to use the prescribed forms for her annual report. Balas responded by letter to Gaskins (copying Dean Barrett and the President

of Longwood) complaining about Gaskins's comment and saying that it was (1) discriminatory and (2) retaliatory for Balas having won her appeal with the FSGC.

In Balas's fifth year (2013 to 2014), the P&T Committee met in October 2013 to review Balas as a probationary faculty member. At that time, Claire La Roche, Cheryl Adkins, Glenn Dardick, and Raymond Brastow made up the P&T Committee. According to Dardick, at the same time as a discussion of faculty members with foreign accents, including Balas, La Roche said that some faculty members did not "fit in" at Longwood.[3] La Roche also shared that she had received complaints from students that could not understand Dr. Balas. When questioned about these comments by Dardick, however, La Roche did not elaborate. La Roche also raised concerns about Balas's grading curve and research publications, but did not raise similar concerns about another faculty member under evaluation. The P&T Committee voted two-two to renew Balas's contract.

Also in October 2013, Gaskins conducted his review of Balas as a probationary faculty member. He rated her teaching as average, her service as satisfactory, and her number of publications as good, but expressed concerns about the quality of the publication outlets. Gaskins commented that Balas had made "little progress in addressing the concerns I expressed last year relating to collegiality and commitment to the institution." (Gaskins Dep. Ex. 15.) Gaskins recommended that Longwood not renew Balas's contract.

In November 2013, in response to Gaskins's review, Balas asked Gaskins to reconsider his recommendation. Gaskins responded with a letter explaining why his recommendation remained unchanged. Balas then asked Gaskins to recuse himself from her tenure-track process,

---

[3] La Roche declared that she did not make these comments. Adkins does not remember the conversation. This dispute of fact is not material to the resolution of the defendants' motion.

4

stating that: "your outlook toward me is devoid of impartiality, and is openly hostile, prejudiced, and retaliatory." (Gaskins Dep. Ex. 18.)

At some point in late 2013, according to P&T Committee Member Dardick, Gaskins came to Dardick's office to persuade Dardick not to vote for Balas for tenure.[4]

At some point in late 2013 or early 2014, Charles White replaced Gaskins as department chair, and Gaskins replaced an outgoing member of the P&T Committee.

During the 2014 to 2015 school year, Balas applied for tenure. In October 2014, both the P&T Committee and Department Chair White reviewed Balas's tenure application. White did not recommend Balas for tenure based on the quality of her scholarship. The P&T Committee—now made up of Gaskins, La Roche, Adkins, and Frank Bacon—unanimously agreed to not recommend Balas for tenure based on her teaching. Based on these recommendations, Dean Barrett and the Provost both recommended against tenure.

Balas submitted a grievance for the denial of tenure to the FSGC. In February 2015, the FSGC issued its opinion. The FSGC found some of Balas's grievances unsubstantiated, such as Department Chair White's assessment of the quality of her scholarship.[5] Nevertheless, the FSGC recommended correcting some of the procedural errors that occurred during the tenure review process, giving Balas an opportunity to submit additional information, then having

---

[4] According to Gaskins, this never happened. This dispute of fact is not material to the resolution of the defendants' motion.
[5] The FSGC stated:

> At the same time, the [FSGC] does not believe that the CBE's decision is surprising. [Balas] received numerous warnings and reminders of the importance of quality scholarship throughout [her] tenure track, as well as concerns about [her] teaching. In many instances, the [FSGC] finds that [Balas] may have disregarded crucial constructive criticism in favor of defending [her] own teaching methods or scholarship, and furthermore did not take advantage of opportunities to speak in person with the P&T Committee, [department chair], or Dean about particular concerns any of them had.

(Am. Compl. Ex. 5.)

Department Chair White and the P&T Committee reassess Balas's tenure application. Presumably after completing these steps, White and the P&T Committee reiterated their recommendation against tenure. Balas appealed to Dean Barrett, the Provost, the President of Longwood, and the Board of Visitors. All appeals were denied. In May 2015, Longwood issued Balas a terminating contract.

## II. DISCUSSION[6]

Balas has alleged national origin discrimination and retaliation in violation of 42 U.S.C. § 1981. Longwood has moved for summary judgment on both counts.

### A. Discrimination

Balas alleges that Longwood discriminated against her based on her national origin when it denied her application for tenure[7] in violation of § 1981. Section 1981 protects the right of all persons to make and enforce contracts. 42 U.S.C. § 1981. To prove a claim of discrimination

---

[6] Longwood has moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[7] In her amended complaint, Balas also alleges that Longwood discriminated against her when it (1) subjected her "to discrimination in the terms and conditions of her employment on account of her Turkish race, ethnicity and national origin," (Am. Compl. ¶ 73), and (2) terminated her employment. Balas does not provide any evidence of the differences between the terms and conditions in her employment and those of non-Turkish faculty. Her complaints about terms and conditions instead seem to relate to how Longwood reviewed Balas's tenure application. Further, Longwood terminated Balas because she did not achieve tenure at the end of her probationary period. Accordingly, Balas's allegations of discrimination boil down to the denial of her tenure application. Even if the Court reviewed these two alleged adverse actions as separate claims of discrimination, however, these claims fail. Balas has provided no evidence of discrimination in the terms and conditions of her employment. As to her termination, Balas offers no evidence that the reason given for her termination (i.e., that Balas did not achieve tenure) was pretext for discrimination.

under § 1981, the plaintiff must show (1) that the defendant intended to discriminate based on a protected characteristic and (2) that the discrimination interfered with a contractual interest. *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006). A plaintiff can prove discriminatory intent through either (1) direct evidence of discrimination or (2) indirect evidence of discrimination under the *McDonnell Douglas*[8] burden-shifting framework. *Id.* Balas argues that she has satisfied both standards of proof.

First, Balas points to two pieces of direct evidence of discrimination: (1) the statement made by Barrett in May 2012 that Balas was not a "good fit" and (2) the statements made by La Roche in the October 2013 P&T Committee meeting that Balas did not "fit in." Courts can consider derogatory remarks as direct evidence of discrimination if the remarks have some connection to the adverse employment decision. *McCray v. Pee Dee Reg'l Transp. Auth.*, 263 F. App'x 301, 305–06 (4th Cir. 2008) (citing *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999)). Stray or isolated derogatory remarks will not suffice. *Id.*[9]

The remarks offered by Balas as direct evidence of discrimination both fall within the category of stray or isolated remarks unrelated to the challenged employment action. Balas challenges her denial of tenure in October 2014. The two remarks offered as direct evidence of discrimination based on Balas's national origin happened in May 2012 and October 2013. Neither remark related to the decisions to deny tenure.[10] Indeed, after the October 2013 remark,

---

[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[9] *See Finkle v. Howard Cnty.*, 640 F. App'x 245, 248 (4th Cir. 2016) (holding that an email on an unrelated topic reflecting a potentially unfavorable attitude about a protected characteristic sent eight months prior to an adverse employment decision was an isolated remark unrelated to the challenged decision, so was insufficient to provide direct evidence of discrimination).

[10] Additionally, the record shows that the May 2012 remark by Barrett did not even relate to Balas's national origin. (Barrett Dep. 17:24–20:2, 23:16–24:14.)

the P&T Committee voted to renew Balas's contract for an additional year. Accordingly, Balas has not offered direct evidence of discrimination to support her § 1981 discrimination claim.

Balas offers the same evidence in support of her argument that she has shown indirect evidence of discriminatory intent under the *McDonnell Douglas* framework. Under this framework, a plaintiff must first establish a prima facie case of discrimination. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. *Id.* If it does, the burden shifts back to the plaintiff to show that the defendant's articulated reason is really pretext for discrimination. *Id.*

Assuming that Balas can establish a prima facie case of discrimination, Longwood has offered a valid, nondiscriminatory reason for denying Balas tenure. Specifically, Longwood exercised its professional judgment when it evaluated Balas in the areas of teaching, scholarship, and service, and found her lacking.[11] *Balas v. Visitors of Longwood Univ.*, No. 3: 16-cv-00553-JAG, 2017 WL 465680, at *4 (E.D. Va. Feb. 3, 2017). At least dating back to May 2012, Longwood alerted Balas that her scholarship and service needed improvement. In 2014, the P&T Committee did not recommend Balas for tenure because of her teaching. Department Chair White did not recommend Balas for tenure because of the quality of her scholarship.

The evidence offered by Balas in response does not show that this reason offered by Longwood was pretextual. As previously discussed, the "fit"-related comments happened at least a year before the decision to deny Balas's tenure application. Regardless, even if La Roche

---

[11] This differs from the cases cited by Balas where the reason offered for not promoting the plaintiff was that she did not "fit in." (Opp'n 15 (quoting *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004).) Longwood does not offer Balas not fitting in as the reason it denied her tenure application. Indeed, as previously discussed, the "fit"-related comments in this case happened long before the tenure decision.

and Gaskins tainted the P&T Committee, Balas does not offer any evidence of discriminatory actions or motives by Department Chair White, who independently evaluated and did not recommend Balas for tenure.[12] Because Balas has not established that Longwood's nondiscriminatory reason for denying her tenure application was pretext, Balas has not offered indirect evidence of discrimination to support her claim. Accordingly, the Court grants summary judgment to the defendants on the discrimination claim.

## B. Retaliation

Balas also alleges that Longwood denied her application for tenure in retaliation to her opposing national origin discrimination. In the absence of direct evidence, the *McDonnell Douglas* burden-shifting framework also applies to retaliation claims. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015).

As with her discrimination claim, Balas's retaliation claim fails because Longwood has offered a nondiscriminatory reason for denying her tenure application, and Balas has not shown evidence that this reason was pretextual. Accordingly, for the reasons discussed in the context of the discrimination claim, *see supra* Part II.A, the Court grants summary judgment to Longwood on the retaliation claim.[13]

---

[12] Indeed, the FSGC found Balas's grievances about White's review unsubstantiated.

[13] Balas's claim also fails because she cannot establish a prima facie case of retaliation. To prove a prima facie case of retaliation, the plaintiff must show (1) that she engaged in a protected activity, (2) that her employer took an adverse employment action, and (3) that a causal connection existed between the protected activity and the adverse action. *Foster*, 787 F.3d at 253. Balas arguably engaged in protected activity by complaining about discrimination in June 2012 when she signed her terminating contract, in July 2013 when she responded to her annual evaluation, and in November 2013 when she asked Gaskins to recuse himself from the P&T Committee. Longwood denied Balas tenure in October 2014. The gaps between the protected activity and the denial decision are too long to establish a causal connection by temporal proximity alone. *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006). Balas's attempt to bridge this gap with evidence of Gaskins's conduct fails because even if Gaskins's actions somehow impute the decision of the P&T Committee to recommend against

# III. CONCLUSION

For these reasons, the Court will grant the defendants' motion for summary judgment.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: _____August 8_____, 2017
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

tenure for Balas, no such connection exists between Gaskins's actions and the independent decision of Department Chair White to recommend against tenure. Accordingly, Balas has not established a causal connection between her protected activity and the decision to deny her tenure application.